# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

|  |  |
|---|---|
| JAMES WHITE,<br><br>Plaintiff,<br><br>v.<br><br>JOSIE GASTELO, et al.,<br><br>Defendants. | No. CV 21-02351-GW (DFM)<br><br>Report and Recommendation of United States Magistrate Judge |

This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.   INTRODUCTION

Plaintiff James White, a state prisoner currently in custody at California Men's Colony ("CMC"), filed a pro se civil rights action under 42 U.S.C. § 1983 in March 2021. See Dkt. 1. The Court dismissed the Complaint with leave to amend, see Dkt. 10, and Plaintiff filed a First Amended Complaint in April 2022, see Dkt. 18 ("FAC"). The Court dismissed the FAC with leave to amend, see Dkt. 19, and Plaintiff filed the operative Second Amended Complaint in November 2022, see Dkt. 24 ("SAC").

The SAC names the following Defendants in their individual capacities: (1) Correctional Officer Urias; (2) Sergeant T. Lloyd; (3) Correctional Officer Cortez; (4) Lieutenant Scheiffele; (5) former Warden Josie Gastelo; (6) Associate Director for the Office of Appeals Howard Moseley and his "agents [and] colleagues";[1] (7) Correctional Captain S. Silvia; (8) Captain J. Curry; and (9) Associate Warden D. McAllister. See id. at 1-4; see also FAC at 2; Dkt. 1 at 2 (listing Defendants' job titles).[2]

The SAC is now before the Court for screening. See 28 U.S.C. §§ 1915(e)(2), 1915A. For the reasons stated below, the Court recommends that the SAC be DISMISSED in part with leave to amend and in part without leave to amend.

## II.   SUMMARY OF ALLEGATIONS AND CLAIMS

Across Plaintiff's pleadings, he strings together a confusing set of allegations. The Court expressly warned Plaintiff that the SAC must "be complete in and of itself" without reference to any prior complaint. See Dkt. 19 at 14. However, the SAC removes key allegations previously included in the FAC, such as information about Defendants' roles at CMC. Accordingly, where necessary to understand Plaintiff's allegations, the Court refers to the FAC in addition to the SAC. Construing these allegations liberally, the Court understands Plaintiff's allegations as follows:

### 1.   Search of Plaintiff's Cell and Disciplinary Hearing

On December 24, 2019, Urias and Cortez conducted a "targeted search of [P]laintiff's cell under the guise of routine." SAC at 2. During the search,

---

[1] The SAC also refers once to "Defendants Appeals Office." SAC at 5. The Court understands this to mean Moseley and his colleagues at the Office of Appeals.

[2] All citations to page numbers refer to the CM/ECF pagination.

Urias "discovered a[n] electronic charging device," inside an ointment box in Plaintiff's cell. See id.; FAC at 2. Urias placed the charging device in his pocket and "left the natural area of discovery" without first photographing the item where he had found it. SAC at 2. Urias then took the charging device to Lloyd to report it. See id. Lloyd "failed to file a supplemental brief related to the contraband reported by Urias" and did not "file a report containing a version of how the falsely alleged contraband . . . came to [him]." Id.

During the search, once Urias informed Cortez of the alleged contraband, Cortez ordered Plaintiff to face the wall, conducted a pat-down of him, and placed him in handcuffs "secured tightly" on his wrists. Id. Plaintiff told Urias and Cortez that the restraints were "'excessively tight' cutting off blood circulation and numbing [P]laintiff's wrists and hands," but they refused to loosen the restraints. FAC at 2. Cortez then escorted Plaintiff to the facility office and placed him "in a cage," where he remained for over two hours while still handcuffed. SAC at 2. Plaintiff suffered "(both) wrist and hand injuries" from this incident. Id.

On February 2, 2020, a disciplinary hearing took place regarding the Rule Violation Report ("RVR") filed against Plaintiff in connection with the alleged contraband. See id. at 3-4. Plaintiff was found guilty of possessing a cell phone component. See id. at 7, 14-15. Plaintiff's disciplinary hearing appears to have resulted in the following sanctions: loss of credit (30 days), and Privilege Group C status (30 days).[3] See id. at 16, 18.

At the hearing, Plaintiff submitted questions to ask Urias; Scheiffele, the Senior Hearing Officer, screened these questions, determined that several

---

[3] Privilege Group C includes various privileges and non-privileges; for example, inmates in Privilege Group C cannot receive family visitors or inmate packages, and their telephone calls and canteen purchases are restricted. See 15 C.C.R. § 3044(f)(2); see also FAC at 47.

questions were irrelevant, and did not allow Plaintiff to ask those questions. See SAC at 3-4, 12-14. In particular, Scheiffele did not allow Plaintiff to ask whether Urias "follow[ed] evidence procedure(s) for wireless communication devices"; photographed the charging connector "prior to removing it from the area" in accordance with "policy and procedure"; took "the proper evidence procedure for wireless communication devices"; sent the charging connector to the Investigative Services Unit or a lab; and had a report from the Investigative Services Unit or a lab. See id. at 4.

It appears that Urias submitted photographs of the alleged contraband as part of the disciplinary process. See id. at 15. Plaintiff attaches these photos to the SAC and alleges that the photos taken of the contraband were "not taken inside a cell or natural location, nor was the ointment box identified in the photo[s]." Id. at 3, 21-22. He alleges that from a "visual inspection [it] is clear it is not a wireless/cellphone component." Id. at 7.

Plaintiff alleges the contraband "is the gross product of distorted falsified documents" and that Scheiffele "denied [Plaintiff] basic due process consideration based on truth an[d] honesty" during the disciplinary hearing. Id. at 3-4. He alleges that Scheiffele failed to afford Plaintiff an investigating employee or staff assistance "to marshal a [reasonable] defense." Id. (brackets in original).[4] He alleges that Scheiffele "had a predetermined GUILT finding and [conducted an] unprofessional RVR Hearing Review"; that the

_____

[4] Plaintiff appears to allege that he was entitled to an investigating employee or staff assistant because he has a "documented Grade Point Level at 01.7." SAC at 3 n.1. Plaintiff also alleges that he has a "table score" that "mandates assistance" and that on January 6, 2020, Plaintiff was "erroneously assigned a staff assistant [Correctional Officer] Monteiro" but that Plaintiff refused this assignment due to a "conflict of interest." Id. at 4. However, it is unclear from the SAC what the connection is, if any, between this alleged incident and Plaintiff's disciplinary hearing.

"predetermined" disciplinary hearing finding was not supported by reliable evidence; that he was not afforded an opportunity to defend himself; that he was denied factual evidence; and that the "alleged cell phone device was falsely documented within [the] RVR," thereby resulting in Plaintiff's "'illegal' loss of privileges and other retaliatory acts." Id. at 4-5. According to Plaintiff, the "disciplinary hearing process was a deliberate sham." Id. at 3.

### 2.   Plaintiff's Inmate Grievance Appeals

On February 26, 2020, Plaintiff appears to have filed an inmate grievance alleging violation of his due process rights in connection with the disciplinary hearing. See FAC at 18-21. It appears that the CDCR investigated Plaintiff's grievance and denied the appeal on April 2, 2020. See FAC at 22-25.[5] Plaintiff also appears to have filed a grievance against Urias and Cortez for "violating state and federal laws by falsifying . . . state documents," (i.e., his RVR). See SAC at 4; see also FAC at 9-11.[6] In connection with one grievance Plaintiff submitted, the Office of Appeals appears to have received the grievance in July 2020 but not responded to Plaintiff until February 2022, at which point it stated that "[d]ue to the amount of correspondence received and the extreme backlog in processing, the Office of Appeals will not take action with regards to outdated correspondence." FAC at 8-9.

Plaintiff alleges that Silva, Curry, and McAllister "conspired to impede [Plaintiff's] complaint [reports] reporting SHO (Scheiffele['s]) illegal RVR

---

[5] The denial is signed by Gastelo. See id. at 25.

[6] Plaintiff also alleges that he filed "contemporaneous grievances . . . reporting multiple acts of retaliation involving several prominent staff members following [Plaintiff's] complaint report" against Urias and Cortez. SAC at 4. Plaintiff identifies these contemporaneous grievances as "Log No 5896 Log No 14302 and Case No 38462," but none of these grievances are attached to the SAC and do not appear to have ever been submitted to the Court.

hearing." Plaintiff appears to allege that these Defendants did so by not assigning Plaintiff an Investigative Employee under 15 C.C.R. § 3315(d); ignoring reports of due process right violations;[7] and "never conducting a minimal [unbiased] investigation" in connection with Plaintiff's disciplinary proceedings. SAC at 4.

Plaintiff alleges that Gastelo repeatedly failed to "reasonably examine falsifying documents of cell phone devices" even though Gastelo was "duly informed by another agency that the component was not a cellphone device," SAC at 3-4. He alleges that Gastelo, after hearing concerns from the Internal Affairs Office, labeled Plaintiff a "THREAT TO PROGRAM SAFETY," thereby subjecting him to emotional or physical harm from other agents. Id. at 5. Plaintiff also alleges that Lloyd acted with other agents to "promote a cover up even after the Officer of Internal Affairs alerted [Gastelo of] possible defects in the evidence" and that "there was a policy or custom that led to violations" of Plaintiff's rights. Id.

Plaintiff alleges that Moseley "acted together in concert" with other agents to unlawfully screen complaints, i.e., by rejecting them as "Time Expired." Id. at 4. Plaintiff alleges that the Office of Appeals ignored his claims against Urias and Cortez despite his reporting that they had caused Plaintiff injury. See id. at 5-6. Finally, Plaintiff alleges that each Defendant, "by way of policy[,] custom or code[,] had a practice of deliberate indifference to the rights of prisoners who complained of staff mistreatment . . . ." Id. at 4.

Based on these allegations, Plaintiff asserts claims for violation of his First, Eighth, and Fourteenth Amendment rights. See SAC at 5-6. Plaintiff

---

[7] In connection with the alleged "reports of due process right violations," Plaintiff references "Appeal Log No# CMC E 20 00435." However, this appeal log is not attached to the SAC and does not appear to have ever been submitted to the Court.

seeks, <u>inter alia</u>, compensatory damages of $1,200,000 from each Defendant, and injunctive relief preventing retaliatory action for Plaintiff's civil action and correcting Plaintiff's classification record. <u>See</u> <u>id.</u> at 6.

## III.    LEGAL STANDARD

"The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). On review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint" is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." <u>Id.</u> § 1915A(b).

"Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012). The Rule 12(b)(6) standard requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

In resolving a 12(b)(6) motion, the Court follows a two-pronged approach. First, the Court accepts all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Nor must the Court "accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 678-80 (citation omitted). Second, assuming the veracity of well-pleaded factual allegations, the Court "determine[s] whether they plausibly give rise to an

entitlement to relief." <u>Id.</u> at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." <u>Id.</u>

Courts must "construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Wilhelm</u>, 680 F.3d at 1121. "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." <u>Karim-Panahi v. L.A. Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).

## IV.  DISCUSSION

To state a claim under § 1983, the plaintiff must allege (1) the violation of a right secured by the Constitution or federal law, and (2) that the alleged violation was committed by a person acting under color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). For a defendant to be liable under § 1983, the plaintiff must show either direct, personal participation of the defendant in the harm or some sufficient causal connection between the defendant's conduct and the alleged rights deprivation. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-06 (9th Cir. 2012).

As an initial matter, the SAC appears to allege claims under the First, Eighth, and Fourteenth Amendments, but the SAC conflates the legal standards for each claim. <u>See, e.g.</u>, SAC at 5 (asserting claim for "deliberate indifference" to Plaintiff's "First Amendment right"). The SAC also does not make clear which claims Plaintiff asserts against each Defendant. <u>See</u> <u>id.</u> at 5-6. The Court construes the SAC liberally and addresses all potential claims made therein. However, even construed liberally, the SAC fails to state a cognizable claim against any Defendant.

**A.**   <u>Claims Related to Cell Search and Restraint</u>

**1.**   **Improper Search**

Plaintiff alleges that Urias and Cortez conducted a "targeted search of [Plaintiff's] cell under the guise of routine." SAC at 2. However, to the extent Plaintiff argues that the search of his cell was illegal, the SAC fails to state a claim because Plaintiff has no Fourth Amendment right to privacy in his cell. <u>See Hudson v. Palmer</u>, 468 U.S. 517, 525-26 (1984). Prison officials may conduct random searches for contraband; officers need not have reasonable suspicion. <u>See id.</u> at 528-29.

**2.**   **Cruel and Unusual Punishment / Excessive Force**

Plaintiff alleges that Cortez subjected Plaintiff to cruel and unusual punishment by placing "excessively tight" handcuffs on him and leaving him in a cage in the prison's facility office for over two hours following the search of his cell. <u>See</u> SAC at 2, 6.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from both inhumane methods of punishment and inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). Use of excessive physical force against a prisoner may constitute cruel and unusual punishment. <u>See Hudson v. McMillian</u>, 503 U.S. 1, 4-6 (1992). "[W]henever prison officials stand accused of using excessive force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u> at 6-7. Five factors bear on the excessive force analysis: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." <u>Bearchild v.</u>

Cobban, 947 F.3d 1130, 1141 (9th Cir. 2020). "It is well-established that overly tight handcuffing can constitute excessive force." Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). In particular, if a prison official disregarded complaints of pain or requests to loosen the handcuffs and the plaintiff suffers significant pain or injury as a result, this suggests a constitutional violation. See Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993). However, in the Eighth Amendment context, a plaintiff must show "more than de minimis force applied for no good faith law enforcement purpose" in order to state a claim. Rodriguez v. County of Los Angeles, 891 F.3d 776, 797 (9th Cir. 2018).

As the Court previously explained in dismissing the FAC, if Plaintiff seeks to pursue an excessive force claim, he must allege sufficient facts about the amount of force applied and the extent of his injury. See Dkt. 19 at 13. Here, the SAC not only lacks sufficient factual allegations to state a claim but omits key allegations that were included in the FAC, such as Plaintiff's numbness and Cortez and Urias's refusal to loosen the handcuffs when asked. See FAC at 2. Although Plaintiff now alleges that the handcuffs "caus[ed] (both) wrist and hand injuries," SAC at 2, it is still unclear what the extent of Plaintiff's injury was. In addition, Plaintiff must also allege facts sufficient for the Court to infer that Cortez's use of force was not de minimis and was not applied for a good faith law enforcement purpose. Although Plaintiff alleges that "no penological threat existed" while he was handcuffed, the allegations in the SAC suggest that Cortez handcuffed Plaintiff because contraband was discovered in his cell. As pleaded, the Court cannot conclude that excessive force was used to "maliciously and sadistically to cause harm" to Plaintiff. See Hudson, 503 U.S. at 7.

**B.**   <u>Claims Related to Disciplinary Hearing</u>

**1.**   **Chain of Custody and Procedural Due Process**

Plaintiff appears to allege that his right to procedural due process in connection with the disciplinary hearing were violated because (i) he was falsely accused of possessing a cell phone component and Urias and Lloyd failed to follow applicable chain-of-custody policies in connection with the alleged contraband; (ii) he was not assigned an Investigative Employee or other assistance to help him prepare a defense to his alleged misconduct; (iii) Scheiffele refused to allow Plaintiff to ask Urias various "relevant questions" during the hearing; and (iv) Scheiffele failed to conduct an unbiased investigation into Plaintiff's alleged possession of a cell phone component and instead presumed Plaintiff guilty. <u>See</u> SAC at 3-5.

Plaintiff states that the device Urias reported finding in Plaintiff's cell was "falsely alleged contraband" and that his constitutional rights were violated in connection with the alleged contraband. <u>Id.</u> at 2. To the extent that Plaintiff claims his rights were violated because the device was planted, the SAC does not allege facts to support this. Instead, the SAC states that Urias discovered the device and placed it in his pocket. Similarly, to the extent that Plaintiff claims his rights were violated because the device was not a cell phone component, the allegations in the SAC are insufficient to establish this. Plaintiff insists that it is clear from a "visual inspection" of the photographs of the alleged contraband that it is not a cell phone component, <u>id.</u> at 7, but he offers no further explanation as to what the item is; he also does not allege that the item was a device he was permitted to have, nor does he allege that the device was not his.[8]

---

[8] It is not clear to the Court from a review of the attached photographs what the device is. <u>See</u> SAC at 21-22.

Inmates facing prison disciplinary action are entitled to certain procedural protections under the Fourteenth Amendment's Due Process Clause, but they are not entitled to the full panoply of rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). For prison disciplinary hearings, an inmate should receive: (1) "advance written notice of the claimed violation"; (2) "a brief period time after the notice" to allow the inmate to prepare for the hearing; (3) a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) assistance when the inmate is illiterate or when there is a complex issue; and (5) a written statement of the "evidence relied on and reasons for the disciplinary action taken." Id. at 563-70. In addition, an inmate is entitled to a fair and impartial decisionmaker at a disciplinary hearing. See Edwards v. Balisok, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.").

The right for an inmate to call witnesses at a disciplinary hearing is not absolute; prison officials can refuse an inmate's request to call witnesses when the evidence would be irrelevant, unnecessary, or hazardous. See Wolff, 418 U.S. at 566. Due process also does not require that an inmate be permitted to confront or cross-examine his accusers. See Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Wolff, 418 U.S. at 567-68. Moreover, a prison's failure to comply with its own regulations in connection with a disciplinary hearing does not, by itself, establish a violation of due process. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-85 (1995).

In dismissing the FAC, the Court explained the legal standard set forth above and concluded that the FAC failed to show that Plaintiff did not receive the due process to which he was entitled. See Dkt. 19 at 8-9. Here, too, the SAC does not plead facts to show that Plaintiff was not afforded due process in connection with his disciplinary hearing. First, as to Plaintiff's chain-of-custody allegations, Plaintiff's asserts that Urias failed to comply with "procedures and policies of [] Title 15"[9] and that Lloyd was "ethically" obligated to file certain reports, but he does not plead facts to show that he was denied due process in the disciplinary hearing as a result of Urias or Lloyd's conduct. See SAC at 2-3.[10] Even if Urias or Lloyd deviated from the applicable procedures or protocols in handling the alleged contraband, this is insufficient to show a violation of Plaintiff's due process rights. See Walker, 14 F.3d at 1419-20.

Second, although Plaintiff appears to allege he was entitled to an

_____

[9] The Court understands this to refer to Title 15 of the California Code of Regulations. See 15 C.C.R. § 3000 et seq. However, the SAC does not specify which section of Title 15 was violated by Urias's conduct, and the Court is unable to identify any provision indicating that Urias was required to document or secure the alleged contraband differently.

[10] To the extent Plaintiff claims that Urias or Lloyd failed to follow the protocols set forth in a memorandum attached to the FAC, see FAC at 32-33 (requiring that "wireless communication device(s) shall be photographed prior to removing the device from the area"), this memorandum appears to apply to wireless communication devices rather than their components; see also id. at 24 (appeal denial indicating that same memorandum "speaks to the expectations upon the discovery of a wireless communication device, not a component of the same item").

Further, to the extent that Plaintiff alleges that Lloyd deprived Plaintiff of his due process rights by "decid[ing] to promote a cover up" in connection with the disciplinary hearing, the SAC does not plead facts to support this claim. See SAC at 4.

Investigative Employee based on his "Grade Point Level," see SAC at 3, he fails to show that he was constitutionally required to receive assistance, see Wolff, 418 U.S. at 570. There is no allegation that Plaintiff is illiterate, and from the SAC it appears that the disciplinary hearing issues were not particularly complex.[11] See SAC at 15. Third, Plaintiff was afforded an opportunity to question Urias during the hearing, and although Scheiffele did not allow Plaintiff to ask all of the questions he wanted to ask, Plaintiff was permitted to ask all questions determined to be relevant. See id. at 12-13. Fourth, Plaintiff was provided with a written summary of the evidence and the reasons for the disciplinary action taken against him. See id. at 9-19. Finally, the SAC fails to allege facts for the Court to reasonably infer that the disciplinary hearing was not fair or impartial.[12] Conclusory statements that the disciplinary hearing was a "sham" and that Plaintiff's guilt was "predetermined," see SAC at 3-4, do not allow the Court to "infer more than the mere possibility of misconduct" and are insufficient to state a claim, see Iqbal, 556 U.S. at 679.

To the extent that Plaintiff alleges that his constitutional rights were violated because no "reliable evidence" supported Scheiffele's finding of guilt, see SAC at 5, Plaintiff's allegation is insufficient. The decision rendered on a prison disciplinary charge must be supported by "some evidence" in the

---

[11] It is also not clear that Plaintiff was entitled to an Investigative Employee under applicable regulations. See 15 C.C.R. § 3315(d) (providing for assignment of investigative employee in limited circumstances). Regardless, however, even if the prison failed to follow this regulation, this alone would not establish a violation of Plaintiff's due process rights. See Walker, 14 F.3d at 1419-20.

[12] Plaintiff does not allege that he was denied advance notice of the claimed rule violation or that he was denied time to prepare for the hearing. See Wolff, 418 U.S. at 564.

record. <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985). The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. <u>Powell v. Gomez</u>, 33 F.3d 39, 40 (9th Cir. 1994). At the disciplinary hearing, Urias testified he found a contraband device (a cellular telephone component) in Plaintiff's cell and provided photographic evidence. <u>See</u> SAC at 15. Because this evidence meets the "some evidence" standard, the SAC fails to state a claim.[13]

       **2.**    **Cruel and Unusual Punishment**

Plaintiff appears to claim that his loss of privileges, based on the disciplinary hearing committee's finding of guilt, constituted cruel and unusual punishment under the Eighth Amendment. <u>See</u> SAC at 5. As discussed above, to state a claim for cruel and unusual punishment, Plaintiff must allege facts to show that he was deprived of basic life necessities or subjected to inhumane conditions of confinement. <u>See</u> <u>Farmer</u>, 511 U.S. at 832 (1994); <u>Morgensen</u>, 465 F.3d at 1045. Here, Plaintiff's apparent loss of credit and placement in Privilege Group C for a limited period of time does not rise to the level of cruel and unusual punishment. <u>See</u> <u>Mahon v. Prunty</u>, 87 F.3d 1320 (9th Cir. 1996) (explaining that "temporary loss" of privileges from plaintiff's placement in Group C for 30 days did not "present a dramatic departure from the basic conditions" of plaintiff's prison life (citation omitted)); <u>see also</u> <u>Molina v. Allison</u>, No. 20-00518, 2022 WL 3013179, at *6 (C.D. Cal. June 8, 2022) (concluding that punishment for RVR consisting of ten days confinement to plaintiff's cell, with no yard or recreation privileges, as well as years of

---

[13] Notably, Plaintiff was given an opportunity to explain what the alleged contraband was if not a cell phone component, but he declined to answer the question. <u>See</u> SAC at 15.

limitations on visiting privileges, did not constitute cruel and unusual punishment). The SAC therefore fails to state a claim.[14]

### 3.   First Amendment Free Speech

Plaintiff appears to allege that Scheiffele's refusal to allow Plaintiff to ask all the questions he wanted to Urias during the disciplinary hearing violated Plaintiff's free speech rights. See SAC at 3. However, as discussed above, Plaintiff's right to question witnesses during a disciplinary hearing sounds in the Due Process Clause of the Fourteenth Amendment, not in the First Amendment. See Wolff, 418 U.S. at 566.

While a prisoner retains First Amendment rights, he only retains those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Impingement on an inmate's First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "[P]reservation of internal order and discipline" is a legitimate penological interest. Procunier v. Martinez, 416 U.S. 396, 412 (1974).

Here, aside from screening Plaintiff's questions, there is no allegation that Scheiffele prevented Plaintiff from engaging in protected speech during the hearing. On the contrary, the RVR report suggests that Scheiffele allowed Plaintiff to make a statement and recorded it. See SAC at 14. Moreover, as the hearing officer, Scheiffele had a responsibility to focus the issues and maintain order in the proceeding. See Wolff, 418 U.S. at 566. Given this, the SAC fails to state a free speech claim against Scheiffele. See Guzman v. Orange Cnty.

---

[14] The Court previously advised Plaintiff of the defects in this claim. See Dkt. 19 at 7-8. Nonetheless, the allegations in the SAC are identical to those in the FAC. Compare SAC at 5 with FAC at 4.

<u>Sheriff's Dep't</u>, No.18-00199, 2018 WL 6017030, at *9 (C.D. Cal. Mar. 16, 2018) (dismissing free speech claim where complaint failed to show that plaintiff was silenced or refrained from future protected speech).

**C.    <u>Claims Related to the Prison Grievance Appeal Process</u>**

**1.    First Amendment Retaliation**

Plaintiff appears to assert claims against Gastelo and Moseley for violation of his First Amendment right to pursue redress through the prison grievance appeal process. <u>See</u> SAC at 3, 5-6. Specifically, Plaintiff alleges that Gastelo heard concerns from the Internal Affairs Office about "possible defects in the evidence," and was informed that the alleged contraband "was not a cellphone device," but repeatedly failed to "reasonably examine falsif[ied] documents of cell phone devices covering up the truth . . . ." SAC at 3-4. Plaintiff also alleges that even after hearing concerns about possible defects in the evidence underlying Plaintiff's RVR, Gastelo labeled Plaintiff a "THREAT TO PROGRAM SAFETY," subjecting him to emotional or physical harm from other agents, in violation of his First Amendment right to pursue redress through the grievance process. <u>Id.</u> at 4. Similarly, Plaintiff alleges that the Office of Appeals ignored his claim that Cortez and Urias had falsified documents and caused injury by putting "excessively tight" restraints on Plaintiff and, as a result, exposed Plaintiff to physical harm, emotional trauma, or harm from another inmate. <u>Id.</u> at 4-5.[15]

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities . . . ." <u>Jones v. Williams</u>, 791 F.3d 1023, 1035 (9th Cir. 2015). "Retaliation against prisoners for their exercise of this

_____

[15] It appears that Plaintiff alleges this claim against both Moseley and the "other agents" within the Office of Appeals, but the SAC does not name any other individuals from the Office of Appeals as Defendants. <u>See</u> SAC at 4.

right is a constitutional violation, and prohibited as a matter of 'clearly established law.'" <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). There are five elements for a viable claim of First Amendment retaliation in this context: (i) an assertion that a state action took some adverse action against an inmate, (ii) because of (iii) that prisoner's protected conduct, and that such action (iv) chilled an inmate's exercise of his First Amendment rights, and (v) the action did not reasonably advance a legitimate correctional goal. <u>See</u> <u>id.</u> (citation omitted).

Here, the SAC does not contain sufficient factual allegations to state a claim for retaliation. First, as to Plaintiff's claim that Gastelo labeled Plaintiff a "THREAT TO PROGRAM SAFETY," the SAC does not provide any facts to show when this occurred in relation to Plaintiff's protected conduct or what the effect of this designation was. Plaintiff's assertion that Gastelo made this designation in order to retaliate against Plaintiff and "expose [him] to emotional or physical harm [from] other agents," SAC at 5, is conclusory. As to Plaintiff's allegation that Gastelo failed to reasonably examine evidence, the SAC fails to allege facts for the Court to reasonably infer that the alleged conduct was retaliatory.[16] Further, Plaintiff does not allege that he was prevented from filing further grievances as a result of Gastelo's alleged

---

[16] To the extent Plaintiff alleges that <u>he</u> notified Gastelo through the inmate appeals process that the alleged contraband was not a cellphone component (or that the evidence was otherwise defective) and that Gastelo failed to reasonably respond to Plaintiff's information, this allegation is unsupported. The attachments to the FAC suggest that the Gastelo/the Office of Appeals <u>did</u> investigate Plaintiff's complaint filed in connection with his disciplinary hearing (Appeal Log No. CMC-E-20-00746) and conducted an interview with Plaintiff in connection with his appeal before ultimately denying Plaintiff's appeal. <u>See</u> FAC at 22-25.

conduct. On the contrary, it appears based on the SAC that Plaintiff filed several grievances in connection with his disciplinary hearing. See id. at 4.[17]

As to Moseley, the SAC fails to allege facts to show that he was personally involved in Plaintiff's alleged rights deprivation and thus fails to state a claim. See Starr, 652 F.3d at 1205-06.[18] Even if Moseley were personally involved in screening Plaintiff's complaints, the SAC fails to allege facts to establish the elements of a First Amendment retaliation claim by Moseley or anyone at the Office of Appeals. See Brodheim, 584 F.3d at 1269. There are no facts showing that Moseley or anyone else retaliated against Plaintiff for exercising his right to file an appeal. In fact, the documents attached to the FAC suggest that the Office of Appeals did not deliberately "ignore" Plaintiff's grievance. Rather, the Office of Appeals informed Plaintiff that it would not take action on Plaintiff's correspondence received in July 2020 due to an "extreme backlog in processing," but also advised Plaintiff that

---

[17] Moreover, contrary to Plaintiff's assertion that "each defendant within [the] [Office of Appeals]" knew or should have known of Plaintiff's "constitutional right to the established grievance prison appeals process," SAC at 4, there is no constitutional right to a particular grievance procedure, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

[18] The SAC also fails to allege facts to show direct involvement by any specific employee within the Office of Appeals. Instead, Plaintiff has lumped together an unspecified number of unidentified defendants and attempts to assert a claim against all of them. This is not permissible under Rule 8 of the Federal Rules of Civil Procedure, which requires Plaintiff to provide "a short and plain statement of the claim[s] showing that [he] is entitled to relief" to give fair notice and to enable each defendant to defend him or herself effectively. Fed. R. Civ. P. 8(a)(2); see also Sloatman v. Housewright, No. 21-08235, 2022 WL 4390458, at *5 (C.D. Cal. Sept. 6, 2022), report and recommendation adopted, 2022 WL 4389514 (C.D. Cal. Sept. 22, 2022) ("[A] complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).")

19

"[i]f [his] inquiry remains, [he] may submit correspondence to the Office of Appeals' Correspondence Coordinator . . . ." FAC at 8. Absent any facts to suggest that Defendants' conduct was retaliatory, the SAC necessarily fails to state a claim.

### 2.    Deliberate Indifference

Plaintiff styles two of his causes of action as claims for "deliberate indifference to [Plaintiff's] First Amendment right to pursue redress through the prison appeals process." SAC at 5. However, a deliberate indifference claim sounds in the Eighth Amendment, not the First Amendment. As discussed above, "[t]he Eighth Amendment imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of inmates." Farmer, 511 U.S. 832 (citation omitted). To state a deliberate indifference claim, a plaintiff must show that: (1) the injury suffered was, "objectively, 'sufficiently serious,'" and (2) the prison official was "deliberate[ly] indifferen[t]' to inmate . . . safety[.]" Id. at 834. The second element requires a plaintiff to show that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

As in the FAC, the SAC fails to meet this standard. Plaintiff alleges that Gastelo and Moseley exposed Plaintiff to "emotional or physical harm" by "other agents" because Gastelo marked Plaintiff as a threat and because Moseley and the Office of Appeals ignored Plaintiff's complaint. SAC at 5-6. However, the SAC contains no facts to support these claims. There are no allegations suggesting that Plaintiff was subject to a serious risk of substantial harm in connection with his attempts to file inmate grievances; there are no allegations to suggest that Gastelo, Moseley, or anyone else was aware of such risk; and there are no allegations to suggest that they acted with deliberate

indifference to that risk. Accordingly, the SAC fails to state an Eighth Amendment claim against these Defendants.[19]

### 3. Conspiracy

Plaintiff alleges that Silva, Curry, and McAllister conspired to prevent Plaintiff from making a complaint about the allegedly illegal disciplinary hearing. See SAC at 4. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); see also Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (a conspiracy under § 1983 requires a plaintiff to show "an agreement or meeting of the minds to violate constitutional rights") (citation omitted).

Here, just as in the FAC, Plaintiff fails to state a cognizable claim of conspiracy.[20] The allegations in the SAC do not show how these Defendants impeded Plaintiff from filing a complaint against Scheiffele, nor do they show how these Defendants could have reached a meeting of the minds needed to form a conspiracy. Conclusory allegations of a conspiracy do not suffice. See Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121 (9th Cir. 1989); see also Yagman v. Wunderlich, No. 21-06093, 2021 WL 5707166, at *4 (C.D. Cal. Nov. 22, 2021), aff'd, No. 21-56277, 2022 WL 2800816 (9th Cir. July 18, 2022) (dismissing conspiracy claim where complaint contained no facts

---

[19] The Court previously advised Plaintiff of the defects in this claim. See Dkt. 19 at 10-12. Nonetheless, the allegations in the SAC are nearly identical to those in the FAC. Compare SAC at 3-6 with FAC at 3-5.

[20] The Court previously advised Plaintiff of the defects in this claim. See Dkt. 19 at 13-14. Nonetheless, the allegations in the SAC are identical to those in the FAC. Compare SAC at 4 with FAC at 3.

showing an agreement or meeting of the minds took place and where claims were premised on deficient constitutional claims).

**D.     Leave to Amend**

If the Court finds that a complaint fails to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). If it is "absolutely clear" that the deficiencies in a pro se complaint cannot be cured by amendment, the Court may dismiss the complaint without leave to amend. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

Plaintiff has been afforded two opportunities to correct the defects identified in his complaints but continues to fail to state a claim. Much of the SAC is copied directly from the FAC with no changes made to cure the defects the Court has identified. Compare SAC at 4-6 with FAC at 3-5. Plaintiff's allegations against Gastelo, Moseley, Silvia, Curry, and McAllister are identical or nearly identical between the SAC and the FAC. Compare SAC at 3-6 with FAC at 3-5. As for Plaintiff's claims related to his disciplinary hearing, the SAC includes some new factual allegations but continues to rely largely on the same allegations as the FAC. Compare SAC at 3-5 with FAC at 2-4. The Court previously advised Plaintiff that he failed to state a claim for any Constitutional violations in connection with his disciplinary hearing and, on the contrary, appears to have been afforded due process protections; the SAC does not suggest otherwise. See Dkt. 19 at 7-10; SAC at 1-5.

With regard to Plaintiff's excessive force claim, while the SAC does not state a claim, the Court recognizes Plaintiff's attempt to amend this portion of his complaint. See SAC at 1-2. Because it is not "absolutely clear" that Plaintiff

could not amend his allegations further to assert an Eighth Amendment excessive force claim, dismissal with leave to amend this claim is appropriate. See Cato, 70 F.3d at 1106.

As for the rest of Plaintiff's claims, however, Plaintiff's failure to improve his allegations make it clear that he cannot successfully cure the defects the Court has identified. Accordingly, further leave to amend would be futile. See Franklin v. Moore, No. 21-3551, 2022 WL 1668150, at *8 (C.D. Cal. Mar. 1, 2022), report and recommendation adopted, 2022 WL 1664060 (C.D. Cal. May 24, 2022) (dismissing first amended complaint with prejudice due to plaintiff's "failure to address the deficiencies in the [complaint] or attempt to amend his claims in any meaningful way"). The Court therefore recommends dismissal of those claims without leave to amend.

## V.   CONCLUSION

The Court recommends entering an order: (1) approving and accepting this Report and Recommendation; (2) dismissing the Second Amended Complaint; and (3) granting Plaintiff leave to amend a Third Amended Complaint limited to his claims of excessive force against Defendant Cortez.

DATE: January 25, 2023

DOUGLAS F. McCORMICK
United States Magistrate Judge