ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General
CAROLYN G. WIDMAN
Deputy Attorney General
State Bar No. 330088
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone:  (213) 269-6655
 Fax:  (916) 731-3641
 E-mail:  Carolyn.Widman@doj.ca.gov
*Attorneys for Defendant Reyes-Cortez*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PEDRO WHITE, SR.,** | 2:21-cv-02351-GW-DFM (PC) |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **J. GASTELO, et al.,** | |
| Defendants. | Judge:      The Honorable Douglas F. McCormick |
| | Trial Date:   Not Set |
| | Action Filed: 3/15/2021 |

**TO PLAINTIFF PEDRO JAMES EVERETT WHITE SR., IN PRO SE:**

**PLEASE TAKE NOTICE** that Defendant Reyes-Cortez (Defendant) moves for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that (1) Plaintiff failed to exhaust available administrative remedies for his retaliation claim against Defendant as required under the Prison Litigation Reform Act; (2) Plaintiff concedes that Defendant did not handcuff Plaintiff in retaliation for exercising his First Amendment rights; (3) Defendant did not use excessive force against Plaintiff in violation of the Eighth Amendment; and (4) Defendant is entitled to qualified immunity.

Consistent with the Court's Case Management and Scheduling Order and Local Rule 7-15, this motion is submitted on the record without oral argument unless the Court orders otherwise. (ECF No. 56 at 2.) This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities, Defendant's separate statement of uncontroverted facts, the declarations and supporting exhibits of J. Stout, H. Moseley, M. Reyes-Cortez, A. Adams, M.D., and Carolyn G. Widman, the pleadings, records, and files in this action, and any such other matters that may properly come before the Court.

Plaintiff's obligations for opposing this motion are described in the concurrently served *Rand* warning, consistent with *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012).

Dated: November 13, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General

*/s/ Carolyn G. Widman*
CAROLYN G. WIDMAN
Deputy Attorney General
*Attorneys for Defendant Reyes-Cortez*

LA2023306192
67229974.docx

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ............................................................... 1

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................. 1

I.      Parties. ....................................................................................................... 1

II.     Plaintiff's Allegations in the Complaint and the Court's
        Screening Order. ....................................................................................... 1

III.    The California Prison Administrative Grievance Process. ....................... 2

IV.     Plaintiff's Administrative Grievances. ..................................................... 3

        A.      Plaintiff's Relevant Grievance: Log No. CMC-20-00149. ........ 3

        B.      Plaintiff's Grievances that Complained About Defendant
                but Unrelated to Allegations in the Complaint. ......................... 4

        C.      Plaintiff's Grievances Unrelated to Defendant and
                Allegations in the Complaint. ..................................................... 5

V.      The December 24, 2019 Handcuffing. ...................................................... 5

VI.     Plaintiff's Alleged Injuries Caused by the December 24, 2019
        Handcuffing. ............................................................................................. 7

VII.    Plaintiff's Medical Record Shows No Injuries Related to the
        December 24, 2019 Handcuffing. ............................................................. 7

Standard of Review ............................................................................................... 8

Argument ............................................................................................................. 10

I.      Defendant Is Entitled to Summary Judgment on Plaintiff's
        Unexhausted Retaliation Claim. ............................................................. 10

        A.      Compliance With the Exhaustion Requirement Is a
                Mandatory Prerequisite to Filing Suit Under § 1983. .............. 10

        B.      Plaintiff Had an Administrative Remedy. ................................. 11

        C.      Plaintiff Failed to Properly Exhaust His Retaliation Claim
                Against Defendant. ................................................................... 11

II.     Plaintiff Conceded that Defendant Did Not Retaliate Against
        Him by Handcuffing Him on December 24, 2019. .................................. 12

III.    Defendant's Use of Handcuffs on Plaintiff Did Not Constitute
        Excessive Force. ...................................................................................... 13

IV.     Defendant Is Entitled to Qualified Immunity. ....................................... 15

Conclusion .......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Albino v. Baca*
747 F.3d 1162 (9th Cir. 2014)......................................................................9, 10

*Allen v. Contreras*
No. 2:21-cv-07765-GW, 2024 WL 4269101 (C.D. Cal. Aug. 9,
2024).............................................................................................................13

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) .......................................................................................9

*Arpin v. Santa Clara Valley Transp. Agency*
261 F.3d 912 (9th Cir. 2001)........................................................................14

*Berg v. Kincheloe*
794 F.2d 457 (9th Cir. 1986)..........................................................................9

*Booth v. Churner*
532 U.S. 731 (2001) .....................................................................................10

*Cano v. Taylor*
739 F.3d 1214 (9th Cir. 2014).......................................................................10

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .......................................................................................9

*Griffin v. Arpaio*
557 F.3d 1117 (9th Cir. 2009).......................................................................11

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) .....................................................................................15

*Hudson v. McMillian*
503 U.S. 1 (1992) .........................................................................................13

*Hunter v. Bryant*
502 U.S. 224 (1991) .....................................................................................15

*Johnson v. Testman*
380 F.3d 691 (2d Cir. 2004)..........................................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Jones v. Bock*
   549 U.S. 199 (2007) ...................................................................................... 10

*Leon v. Celayz, et al.*
   No. 20-cv-00899-AJB-BGS, 2022 WL 1308123 (S.D. Cal. May 2,
   2022) ........................................................................................................... 15

*McKinney v. Carey*
   311 F.3d 1198 (9th Cir. 2002) ...................................................................... 10

*Pearson v. Callahan*
   129 S. Ct. 808 (2009) ................................................................................... 16

*Porter v. Nussle*
   534 U.S. 516 (2002) ...................................................................................... 10

*Ramorino v. County of Los Angeles*
   No. 2:23-cv-00090-SVW, 2024 WL 3468328 (C.D. Cal. May 31,
   2024) ........................................................................................................... 13

*Rodriguez v. Cty. of Los Angeles*
   891 F.3d 776 (9th Cir. 2018) ........................................................................ 13

*Ross v. Blake*
   136 S. Ct. 1850 (2016) ................................................................................. 10

*Sapp v. Kimbrell*
   623 F.3d 813 (9th Cir. 2010) ........................................................................ 11

*Saucier v. Katz*
   533 U.S. 194 (2001) ...................................................................................... 16

*Triton Energy Corp. v. Square D. Co.*
   68 F.3d 1216 (9th Cir. 1995) .......................................................................... 9

*Wall v. County of Orange*
   364 F.3d 1107 (9th Cir. 2004) ...................................................................... 13

*Whitley v. Albers*
   475 U.S. 312 (1986) ...................................................................................... 13

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Woodford v. Ngo*
   548 U.S. 81 (2006) ........................................................................................ 10, 11

*Woods v. Carey*
   684 F.3d 934 (9th Cir. 2012) ................................................................................. 2

**STATUTES**

42 U.S.C. § 1997e(a) ...................................................................................................... 10

Prison Litigation Reform Act ..................................................................................... 1, 1

**CONSTITUTIONAL PROVISIONS**

First Amendment ........................................................................................................ 1, 2

Fourth Amendment ........................................................................................................ 13

Eighth Amendment .................................................................................................*passim*

**COURT RULES**

Fed. R. Civ. P.
   56 ........................................................................................................................... 1, 9
   56(c) ......................................................................................................................... 9

**REGULATIONS**

California Code of Regulations, Title 15
   §§ 3084-3085 ............................................................................................................ 2
   §§ 3480-3487 ............................................................................................................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

Plaintiff Pedro James Everett White Sr., a state prisoner proceeding *pro se*, brought this § 1983 action against Defendant Correctional Officer Reyes-Cortez for allegedly violating his First and Eighth Amendment rights.  Defendant moves for summary judgment on all claims as follows: (1) Plaintiff's retaliation claim is barred by the Prison Litigation Reform Act because he failed to exhaust his available administrative remedies before filing suit; (2) Plaintiff concedes that Defendant did not handcuff Plaintiff in retaliation for filing grievances; (3) Defendant's handcuffing of Plaintiff did not constitute excessive force in violation of the Eighth Amendment; and (4) Defendant is entitled to qualified immunity.

# STATEMENT OF FACTS

## I.   PARTIES.

Plaintiff is a *pro se* prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), who at all times relevant to the allegations in his complaint, was housed at California Men's Colony (CMC).  (Defendant's Statement of Uncontroverted Facts (DUF) 1.)  Defendant was employed as a Correctional Officer at CMC at all relevant times.  (DUF 2.)

## II.   PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT AND THE COURT'S SCREENING ORDER.

This case proceeds on Plaintiff's Third Amended Complaint (TAC III).[1] (ECF No. 43.)  Plaintiff alleges that Defendant placed Plaintiff in tight handcuffs during a search of Plaintiff's cell on December 24, 2019, and subsequently placed Plaintiff in a holding cell without removing the handcuffs.  (*Id.* at 1.)  Plaintiff alleges that he asked Defendant to remove or loosen the handcuffs since he was in a holding cell and noted the handcuffs were "extremely tight" and "cutting into [his]

---

[1] This is Plaintiff's third "Third Amended Complaint."  (*See* ECF Nos. 27, 40, 43, 44.)

1

skin and cutting off [his] circulation," but Defendant ignored Plaintiff. (*Id.*) Plaintiff alleges that he asked Defendant again to loosen or remove the handcuffs and Defendant replied, "That's what you get for filing 602's administrative appeals and staff complaints and misconduct against us." (*Id.* at 2.) Plaintiff further alleges that Defendant left Plaintiff handcuffed in the holding cell for over two hours causing him to suffer chronic pain and discomfort in his right shoulder and wrists. (*Id.*)

The Court screened the operative TAC III and allowed Plaintiff to proceed on an Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendant in an individual capacity. (ECF No. 44.)

**III.  THE CALIFORNIA PRISON ADMINISTRATIVE GRIEVANCE PROCESS.**

An administrative grievance process was available to Plaintiff at all times between December 24, 2019 (the date of the alleged events) and September 11, 2023 (the date Plaintiff filed this lawsuit). (DUF 3.)

Before June 1, 2020, an inmate was required to follow the procedures set forth in California Code of Regulations, Title 15, sections 3084-3085. (DUF 4.) The grievance process had three levels of review, which the inmate initiated by submitting a CDCR Form 602 to the institution's grievance coordinator. (*Id.*) Inmates were required to submit grievances within 30 days of the grieved event. Cal. Code Regs. tit. 15, §§ 3084.8(b)(1), 3084.7(a). First and second-level grievances were received and decided by the grievance office at the institution where the issue being grieved arose, while third-level grievances were received and decided by the Office of Appeals (OOA) located in Sacramento, California. (DUF 4.) A final decision by the OOA generally exhausted an inmate grievance. (*Id.*) Administrative remedies were not exhausted as to any new issue, information, or person that was not included in the originally submitted CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.1(b).

///

2

Beginning June 1, 2020, an inmate is required to follow procedures set forth in California Code of Regulations, Title 15, sections 3480-3487 when submitting a grievance.  (DUF 5.)  The grievance process changed to two levels of review—a review at the institutional level with the Office of Grievances (OOG) and a review at the OOA.  (*Id.*)  This process requires the inmate to submit a Form 602-1 to the OOG at the prison where the inmate is housed.  (*Id.*)  A final decision by the OOA is required to exhaust an inmate grievance.  (*Id.*)

## IV.  PLAINTIFF'S ADMINISTRATIVE GRIEVANCES.

Between December 24, 2019 (the date of the alleged events), through September 11, 2023 (the date Plaintiff filed this lawsuit), Plaintiff submitted four[2] administrative grievances that named Defendant, but only one of those grievances is relevant to the allegations in the operative complaint.  (DUF 6.)

### A.   Plaintiff's Relevant Grievance: Log No. CMC-20-00149.

In Log No. CMC-20-00149, Plaintiff complained that Defendant handcuffed and escorted Plaintiff to a holding cell "in order to search his cell" on December 24, 2019.  (DUF 7.)  Plaintiff further complained that Defendant left Plaintiff in tight handcuffs cutting off his circulation for two hours while the cell search continued.  (*Id.*)  Plaintiff also complained that the cell search was retaliatory.  (*Id.*)  The OOG received this grievance on January 8, 2020, and determined it to be an allegation of staff misconduct against Defendant for unnecessary or excessive use of force.  (*Id.*)  On January 21, 2020, the OOG partially granted the grievance at the second level of review (SLR), in that an appeal inquiry was conducted.  (*Id.*)  The SLR decision noted that issues unrelated to the allegation of staff misconduct will not be addressed in this response and must be raised separately.  (*Id.*)

///

---

[2] The operative TAC also references Log No. CMC-20-01110 as relevant, but it neither references Defendant nor the December 24, 2019 handcuffing.  (*See* ECF No. 43 at 3.)  In that grievance, Plaintiff complained that a nonparty correctional officer used excessive force on April 7, 2020, by placing Plaintiff in tight handcuffs that cut off Plaintiff's circulation.  (Stout Decl., ¶ 17, Ex. H.)

In Appeal Log No. 2003289 (an appeal of Grievance Log No. CMC-20-00149), Plaintiff alleged that Defendant used unnecessary force against Plaintiff while another correctional officer searched Plaintiff's cell on December 24, 2019. (DUF 8.)  Specifically, Plaintiff complained that Defendant handcuffed and left Plaintiff in overly tight handcuffs for two hours.  (*Id.*)  Plaintiff also alleged the cell search was retaliatory.  (*Id.*)  This appeal did not include any allegation that the handcuffing was because Plaintiff had filed staff misconduct complaints.  (*Id.*)  The OOA denied this appeal on December 4, 2020.  (*Id.*)

**B.    Plaintiff's Grievances that Complained About Defendant but Unrelated to Allegations in the Complaint.**

In Log No. CMC-20-00435, Plaintiff complained that Defendant and a correctional officer searched Plaintiff's cell on January 28, 2020, in retaliation for Plaintiff's submission of Log No. CMC-20-00149.  (DUF 9.)  On February 28, 2020, the OOG cancelled Log No. CMC-20-00435 because Plaintiff refused to be interviewed about this grievance by the reviewing lieutenant.  (*Id.*)

In Log No. CMC-20-01023, Plaintiff contested the cancellation of the CMC-20-00435.  (DUF 10.)  Plaintiff complained that the reviewing lieutenant conspired with the correctional staff named in that grievance to cover up the acts of rogue officers.  (*Id.*)  The OOG denied Log No. CMC-20-01023 at the SLR on April 20, 2020.  (*Id.*)  In Appeal Log No. 2006716 (an appeal of Log No. CMC-20-01023), Plaintiff contested the cancellation of CMC-20-00435 at the second level of review.  (DUF 11.)  In a letter dated August 10, 2021, the OOA informed Plaintiff that the second level response dated April 20, 2020, served as the Department's final decision.  (*Id.*)

In Log No. CMC-20-00746, Plaintiff complained that Defendant and a correctional officer filed a false rules violation report (RVR) against Plaintiff for "possession of a cellular telephone component" based on "the retaliatory planting of contraband" during the December 24, 2019 cell search.  (DUF 12.)  Plaintiff also

4

complained that his due process rights were violated at the RVR disciplinary proceedings. (*Id.*)  The OOG denied this grievance at the SLR on April 2, 2020, and noted Plaintiff's allegations against Defendant had been addressed in response to CMC-20-00149.  (*Id.*)  Plaintiff appealed Grievance Log No. CMC-20-00746 to the OOA, which was assigned Log No. 2008995.  (DUF 13.)  In a letter dated August 10, 2021, the OOA informed Plaintiff that the second level response dated April 2, 2020, served as the Department's final decision.  (*Id.*)

### C.   Plaintiff's Grievances Unrelated to Defendant and Allegations in the Complaint.

From between December 24, 2019 (the date of the alleged events), through September 11, 2023 (the date Plaintiff filed this lawsuit), Plaintiff submitted 28 other grievances and 15 appeals that were unrelated to the allegations in Plaintiff's complaint.  (DUF 14-15.)

### V.   THE DECEMBER 24, 2019 HANDCUFFING.

On December 24, 2019, Defendant was on duty as the Facility C Building 6 Fourth Officer.  (DUF 16.)  At or around 10:30 a.m., the First Floor Officer ("Officer"), who is not a party to this lawsuit, was conducting a routine search of Plaintiff's cell while Defendant provided support by maintaining security at the cell entrance.  (*Id.*)  During the search, the Officer found a cell phone charger, which is considered contraband.  (DUF 17.)  The Officer confiscated the item and secured the cell to return to attempt to locate the corresponding cell phone.  (*Id.*)  Plaintiff later received a rules violation report for possession of a cell phone component.  (DUF 18.)  After the Officer secured the cell, Defendant observed Plaintiff approach the Officer.  (DUF 19.)  Plaintiff appeared agitated and loudly demanded to be present for any subsequent search.  (*Id.*)  The Officer summoned Defendant to assist as Plaintiff refused to leave the area.  (*Id.*)

A disruptive inmate can cause a security and safety risk in many ways, including, but not limited to, the risk that he may try to attack staff, the risk that his

5

behavior might be a decoy to cover for other inmates who may plan to cause a disruption, or the risk that the inmate's disruptive behavior might entice other inmates to cause a disruption. (DUF 20.) An inmate who appears irate or behaves in a disruptive manner during a cell search is handcuffed and removed from the building. (DUF 21.) Generally, building officers are responsible for removing the inmate and yard officers escort the inmate to the facility program office temporary holding cell. (*Id.*)

Based on the contraband discovery and Plaintiff's disruptive behavior, Defendant determined it was not safe for Plaintiff to be there and ordered Plaintiff to turn around and to submit to handcuffs. (DUF 22.) Plaintiff complied with Defendant's orders. (*Id.*) Defendant saw nothing in Plaintiff's conduct or demeanor that would suggest that the handcuffs were unusually tight. (*Id.*) Defendant handcuffed Plaintiff in an ordinary manner. (Reyes-Cortez Decl. ¶ 8.) Defendant did not put the handcuffs on Plaintiff in an unusually tight manner or with the intention to cause Plaintiff pain. (*Id.*) Consistent with Defendant's training and experience as a correctional officer regarding the application of handcuffs, Defendant always confirms that an index finger fits between the inmate's wrists and the handcuffs. (DUF 23.) Using this measurement ensures the handcuffs will not cut off circulation but are snug enough to prevent the possibility of escape. (*Id.*)

Generally, once an inmate is placed in handcuffs, a housing unit officer escorts the inmate to the entrance of the housing unit, where a yard officer takes over the escort to the program office. (DUF 24.) Based on this general practice, Defendant believes she escorted Plaintiff from the first-floor cell area to the entrance of Building 6, where a Facility C yard officer took custody of Plaintiff to escort him to the program office for placement in a temporary holding cell. (*Id.*) Defendant does not recall having any further involvement with Plaintiff on December 24, 2019. (DUF 25.) To the best of Defendant's recollection, Defendant did not secure

Plaintiff in the temporary holding cell, nor did Defendant release Plaintiff from the temporary holding cell. (*Id.*)

In his deposition, Plaintiff testified that Defendant escorted Plaintiff to the holding cell where he complained about the handcuffs. (DUF 26.) Specifically, Plaintiff testified that, "she left me in the cage with the handcuffs on too tight, and I told her before she left, 'The handcuffs too tight. Can you take them off?' She told me, 'No, stay in the cage.'" (*Id.*) Plaintiff further testified that Defendant retaliated against him by ordering other correctional officers to search his cell *after* he filed the grievance against Defendant for the handcuffing on December 24, 2019. (DUF 27.) Plaintiff conceded that Defendant did not retaliate against him by handcuffing him on December 24, 2019. (*Id.*)

## VI. PLAINTIFF'S ALLEGED INJURIES CAUSED BY THE DECEMBER 24, 2019 HANDCUFFING.

According to Plaintiff's deposition testimony and the operative complaint, the December 24, 2019 handcuffing incident caused injury to Plaintiff's right shoulder extending down through his right arm and fingers. (DUF 28.) Plaintiff testified that he felt "tingling in the fingers, numb throughout the shoulder, all the way up the arm, tingling and just pain," and that he sought and received medical care for his alleged injuries, including physical therapy, medication, and a wrist support brace. (*Id.*) Plaintiff testified that his injuries have not healed and that he occasionally feels the "tingling in his shoulder and his fingers," but acknowledged that he suffered no other injuries as a result of the December 24, 2019 handcuffing. (DUF 29.)

## VII. PLAINTIFF'S MEDICAL RECORD SHOWS NO INJURIES RELATED TO THE DECEMBER 24, 2019 HANDCUFFING.

Plaintiff's prison medical file records reveal that Plaintiff never complained of his alleged December 24, 2019 injuries nor did he request medical care for them. (DUF 30.) However, more than three months later, on April 7, 2020, Plaintiff

7

submitted a 7362 Health Care Request for Services (CDCR 7362), in which Plaintiff complained *for the first time* of "numbing pain in my fingers and arms," and attributed these injuries to being tightly handcuffed by a non-Defendant correctional officer for an hour and a half *on the morning of April 7, 2020.* (*Id.*) Plaintiff's medical records reveal that Plaintiff repeatedly attributed his alleged injuries to a handcuffing incident on April 7, 2020. (DUF 31.) An October 2, 2020 medical progress report states that Plaintiff "denies any specific injury and denies any prior history of pain in this area. He states in April 2020 he was placed in handcuffs for 2 hours and after that he felt the numbness in his right arm which he states he still feels up to this time." (*Id.*)

Over the next two years, from April 2020 through April 2022, Plaintiff received medical treatment and underwent various diagnostic tests for the injuries he complained of on April 7, 2020. (DUF 32.) These tests revealed Plaintiff has several degenerative conditions in his spine, neck, and both shoulders, including nerve impingement and arthritis, and a bullet in his cervical spine and left shoulder. (*Id.*)

Defendant's medical expert opined that Plaintiff's alleged injuries—tingling, numbness, and pain in his right shoulder extending to his wrist and fingers—are the result of nerve impingement and arthritis in his neck and shoulder. (DUF 33.) Defendant's medical expert further opined that it is a matter of medical certainty that those injuries could not be the result of restrictive handcuffing nor are there medical records reporting that Plaintiff complained about any injury resulting from the handcuffing on December 24, 2019, and/or Plaintiff sustained any injury to his right shoulder, arm, or wrists as a result of the handcuffing on December 24, 2019. (DUF 34.)

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact

8

and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The nonmoving party must present competent evidence showing that there are genuine issues of material fact and cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Dismissal of a claim or action for failure to exhaust administrative remedies is properly sought in a motion for summary judgment under Federal Rule of Civil Procedure 56. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). In the context of seeking summary judgment for failure to comply with the Prison Litigation Reform Act's (PLRA) exhaustion requirement, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. When the defendant satisfies this initial burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* If the undisputed evidence, construed in the light most favorable to the

9

prisoner, demonstrates a failure to exhaust available administrative remedies, then summary judgment should be granted. *Id.* at 1166.

## ARGUMENT

### I. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S UNEXHAUSTED RETALIATION CLAIM.

#### A. Compliance With the Exhaustion Requirement Is a Mandatory Prerequisite to Filing Suit Under § 1983.

The PLRA requires that "a prisoner confined in any jail, prison, or other correctional facility" exhaust all available administrative remedies before initiating a civil action with respect to prison conditions. 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the prison, so long as the administrative process can provide some sort of relief on the grievance filed by the prisoner. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). A claim must be exhausted *before* it is brought in a lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Cano v. Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014) ("The Ninth Circuit has explained that Congress purposefully made exhaustion a precondition to suit, rather than to judgment.")

Plaintiff was required to exhaust the mandatory grievance procedure that was in effect at the time prior to initiating the action with respect to each of the claims asserted in his complaint. *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). A prisoner does not satisfy the PLRA's exhaustion requirement by filing a procedurally defective administrative grievance. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). To properly exhaust administrative remedies, a prisoner must complete the administrative grievance process in accordance with the prison's procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 90-91.

///

///

10

### B. Plaintiff Had an Administrative Remedy.

At all times relevant to this action, the administrative grievance process detailed above was available to Plaintiff. (DUF 3.) Plaintiff fully understood that grievance process given that he filed one grievance relevant to the allegations in the operative complaint. (DUF 6.) The undisputed evidence also establishes that Plaintiff filed other grievances and exhausted some of those through the OOA. (DUF 14-15.)

Accordingly, because Plaintiff was aware of the administrative grievance process during the applicable time period—and actually availed himself of the process—the administrative grievance process was clearly available to Plaintiff. (DUF 6-15.) Plaintiff was therefore required to exhaust his retaliation claim against Defendant before filing suit.

### C. Plaintiff Failed to Properly Exhaust His Retaliation Claim Against Defendant.

"[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedures." *Woodford*, 548 U.S. at 90. A prisoner complies with an institution's administrative procedures when a grievance "alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). To provide adequate notice, an inmate must "provide the level of detail required by the prison's regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). "In order to exhaust…inmates must provide enough information about the conduct of which they complain to allow prison officials to take responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

The operative complaint states a retaliation claim against Defendant for allegedly handcuffing Plaintiff too tightly on December 24, 2019, in retaliation for Plaintiff filing staff misconduct complaints. (ECF No. 43.) Only one of Plaintiff's exhausted grievances (Grievance Log No. CMC-20-00149) complains about Defendant and conduct related to Plaintiff's allegations in the TAC III, and in that

11

grievance, Plaintiff complained only that Defendant handcuffed Plaintiff and left him in tight handcuffs cutting off his circulation during a cell search.  (DUF 7-8.) Plaintiff did not complain that Defendant handcuffed him tightly *because* Plaintiff filed grievances.  (*Id.*)  Rather, Grievance Log No. CMC-20-00149 complained that a non-party correctional officer subjected Plaintiff to a retaliatory cell search.  (*Id.*)

Absent additional information, which Plaintiff failed to provide, prison officials could not have known about, much less taken responsive measures to address, the alleged retaliation by Defendant.  Therefore, grievance Log No. CMC-20-00149 was not sufficient to exhaust Plaintiff's administrative remedies as to the retaliation claim against Defendant, and no other grievance filed by Plaintiff did so either.  (*See* DUF 6-15.)  While Plaintiff filed three other grievances that complained about Defendant (Log Nos. CMC-20-00435, CMC-20-01023, CMC-20-00746), none of those grievances complained about the alleged events in the operative complaint.  (*See* DUF 9-13.)  And none of Plaintiff's other grievances filed with CMC's OOG, or with OOA, complain about Defendant's alleged retaliatory conduct on December 24, 2019.  (*See* DUF 14-15.)

Accordingly, Plaintiff failed to exhaust his administrative remedies as to his retaliation claim against Defendant before filing suit, and this claim is therefore barred under the PLRA.

## II. PLAINTIFF CONCEDED THAT DEFENDANT DID NOT RETALIATE AGAINST HIM BY HANDCUFFING HIM ON DECEMBER 24, 2019.

Aside from Plaintiff's failure to exhaust, Defendant is entitled to summary judgment on Plaintiff's retaliation claim because it is undisputed that Defendant's handcuffing of Plaintiff on December 24, 2019, was not retaliatory.  (DUF 27.) Plaintiff confirmed in his deposition that Defendant did not retaliate against Plaintiff by handcuffing him on December 24, 2019.  (*Id.*)  Plaintiff testified that Defendant's retaliatory conduct occurred sometime after his December 19, 2019 interaction with Defendant in the form of cell searches.  (*Id.*)  Because Plaintiff

does not contend that Defendant's use of handcuffs on December 24, 2019, was retaliatory, the Court should grant summary judgment to Defendant on Plaintiff's retaliation claim.

### III. DEFENDANT'S USE OF HANDCUFFS ON PLAINTIFF DID NOT CONSTITUTE EXCESSIVE FORCE.

The use of excessive force by a prison official constitutes a violation of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Not every malevolent touch by a prison official gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10. The core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.*; s*ee also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018).

"[O]verly tight handcuffing can constitute excessive force." *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (Fourth Amendment claim). Although the level at which tight handcuffing becomes unconstitutional is not well defined, the Ninth Circuit's precedent "hazily outlines two theories by which a Plaintiff can make out a claim for excessive force based on overly tight handcuffing." *Ramorino v. County of Los Angeles*, No. 2:23-cv-00090-SVW, 2024 WL 3468328, at *6 (C.D. Cal. May 31, 2024). A plaintiff must show that either (1) the handcuffing caused significant demonstrable injury, or (2) officers ignored or refused repeated requests to loosen the handcuffs once alerted that the handcuffs were too tight. *See id.; Allen v. Contreras*, No. 2:21-cv-07765-GW, 2024 WL 4269101, at *9-11 (C.D. Cal. Aug. 9, 2024).

As an initial matter, Defendant denies applying handcuffs on Plaintiff in an unusually tight manner or with intent to cause Plaintiff pain. (Reyes-Cortez Decl. ¶ 8.) Defendant saw nothing in Plaintiff's conduct or demeanor that would suggest

13

that the handcuffs were unusually tight.  (DUF 22.)  Indeed, Defendant always confirms that an index finger fits between the inmate's wrists and the handcuffs to ensure that the handcuffs will not cut off circulation.  (DUF 23.)  Defendant does not recall further involvement with Plaintiff and does not believe she was present at the holding cell, where Plaintiff allegedly asked Defendant to loosen the handcuffs.  (*See* DUF 24, 25.)

However, taking the facts in the light most favorable to Plaintiff, Plaintiff's excessive force claim fails because it does not satisfy either theory described above.  The claim fails under the first theory because Plaintiff did not claim or seek medical treatment for significant demonstrable physical injury arising from the December 24, 2019 handcuffing.  (DUF 34.)  To be sure, a claim based on injuries resulting from tight handcuffing must be supported by objective medical evidence to survive summary judgment.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001).  The overwhelming evidence—including Plaintiff's own medical record—is to the contrary.  Plaintiff's alleged injuries—tingling, numbness, and pain in his right shoulder extending to his wrist and fingers—are the result of nerve impingement and arthritis in his neck and shoulder.  (DUF 33.)  There is no documentation in Plaintiff's medical file indicating that Plaintiff ever complained about any injuries resulting from the handcuffing on December 24, 2019, and there are no records indicating that Plaintiff sustained any significant injury as a result of the handcuffing on December 24, 2019.  (DUF 30-34.)  Moreover, Plaintiff first complained of his alleged injuries over three months later in April 2020.  (DUF 30.)  Plaintiff consistently reported to his physician and medical staff that these injuries were caused by an unrelated handcuffing incident that occurred in April 2020.  (DUF 31.)

Plaintiff's excessive force claim fails on the second theory because Defendant did not ignore repeated requests to remove or loosen the handcuffs after being informed that the handcuffs were too tight.  Again, Defendant denies knowledge

that the handcuffs were too tight and does not recall being involved in placing Plaintiff in the program office holding cell where Plaintiff allegedly asked her to loosen the cuffs.  (DUF 25; *see also* Reyes-Cortez Decl. ¶ 11.)  However, even crediting Plaintiff's allegation that Defendant secured him in the holding cell, Plaintiff's claim fails because "a single complaint relating to tight handcuffs is not sufficient to show that the handcuffing constituted excessive force."  *See Leon v. Celayz, et al.*, No. 20-cv-00899-AJB-BGS, 2022 WL 1308123, at *9 (S.D. Cal. May 2, 2022).  In his deposition, Plaintiff testified the following occurred:

> "Officer Cortez placed me in handcuffs, walked me across the yard and put me in the cage, and left me in the cage with the handcuffs on too tight, and I told her before she left, 'The handcuffs too tight.  Can you take them off?'  She told me, 'No, stay in the cage.'"

(DUF 26.)

The undisputed evidence shows that Plaintiff did not suffer significant injuries from being handcuffed on December 24, 2019.  (*See* DUF 30-34.)  Moreover, Plaintiff cannot offer credible evidence that Defendant had knowledge that the handcuffs were too tight and purposely ignored multiple requests to remove the handcuffs.  (*See* DUF 22-26.)  Accordingly, there is no plausible evidence for a reasonably jury to conclude that the December 24, 2019 handcuffing violated Plaintiff's Eighth Amendment rights.  As such, Defendant is entitled to summary judgment on this claim.

## IV.  DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields an official from civil-damages liability unless his conduct violated clearly established law, of which a reasonable official would have known.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Thus, officials are afforded "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotes and citation omitted).  Qualified immunity applies

15

to mistaken judgments, regardless of whether the officials make a mistake of law, fact, or some combination of the two. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

Qualified immunity applies when either of two conditions exist. *Saucier v. Katz,* 533 U.S. 194, 200 (2001). One condition is when no "constitutional right would have been violated on the facts alleged." *Id*. If, after a review of the facts taken in the light most favorable to the plaintiff, no right was violated, then the inquiry ends, and the defendants prevail. *Id.* at 201. The other condition is when the constitutional right was not "clearly established" under the particular circumstances. *Id.* at 200. If a reasonable officer could have believed the defendant's actions were lawful, the defendant is entitled to qualified immunity. *Id.* at 201-02, 208.

As discussed above, even if Plaintiff's allegations are taken as true, the undisputed material facts based on the evidence show that Defendant is entitled to qualified immunity because Defendant acted in good faith to maintain safety and security. (DUF 19-22.) There is no evidence that Defendant's actions caused an Eighth Amendment violation.

Even if the Court found that Defendant's actions were unconstitutional, it would not have been clear to a reasonable officer that Defendant's actions or inactions were unlawful under the circumstances. Absent some aggravating factor, a reasonable officer in Defendant's position could not have known that handcuffing a prisoner who was disrupting a routine cell search could violate his rights. Plaintiff complied with Defendant's orders to submit to handcuffs and Defendant saw nothing in Plaintiff's conduct or demeanor that would suggest that the handcuffs were unusually tight. (DUF 22.)

For these reasons, Defendant is entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

///

16

## CONCLUSION

Defendant is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff failed to exhaust administrative remedies as to this claim. Additionally, Defendant is entitled to summary judgment on Plaintiff's retaliation claim because it is undisputed that Defendant's handcuffing of Plaintiff on December 24, 2019, was not retaliatory. Defendant is entitled to summary judgment on Plaintiff's excessive force claim as the December 24, 2019 handcuffing did not constitute excessive force in violation of the Eighth Amendment. Finally, Defendant is entitled to qualified immunity because she did not violate clearly established law and acted reasonably under the circumstances.

Accordingly, the Court should grant Defendant summary judgment and enter judgment in Defendant's favor on all claims.

Dated: November 13, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General

*/s/ Carolyn G. Widman*
CAROLYN G. WIDMAN
Deputy Attorney General
*Attorneys for Defendant*
*Reyes-Cortez*

17

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief contains 5,068 words, which complies with the 7,000-word limit of L.R. 11-6.1.

Dated:  November 13, 2024                              Respectfully submitted,

                                                       ROB BONTA
                                                       Attorney General of California


                                                       */s/ Carolyn G. Widman*
                                                       CAROLYN G. WIDMAN
                                                       Deputy Attorney General
                                                       *Attorneys for Defendant*
                                                       *Reyes-Cortez*