ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General
CAROLYN G. WIDMAN
Deputy Attorney General
State Bar No. 330088
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6655
  Fax:  (916) 731-3641
  E-mail:  Carolyn.Widman@doj.ca.gov
*Attorneys for Defendant Reyes-Cortez*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PEDRO WHITE, SR.,**<br><br>Plaintiff,<br><br>v.<br><br>**J. GASTELO, et al.,**<br><br>Defendants. | 2:21-cv-02351-GW-DFM (PC)<br><br>**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:        The Honorable Douglas F. McCormick<br>Trial Date:   Not Set<br>Action Filed: March 15, 2021 |

Defendant Reyes-Cortez (Defendant) respectfully submits this Statement of Uncontroverted Facts pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1 in support of Defendant's Motion for Summary Judgment.  These facts are undisputed solely for the purposes of Defendant's Motion for Summary Judgment.

///

///

///

///

1

**PARTIES**

| No. | Defendant's Uncontroverted Fact | Plaintiff's Response |
|---|---|---|
| 1. | At all relevant times, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation (CDCR) at California Men's Colony (CMC). (ECF No. 1; Widman Decl. ¶ 3, Ex. B, ¶ 5, Ex. D ("Pl.'s Dep.") 14:19-22.) | |
| 2. | Defendant Reyes-Cortez was employed as a Correctional Officer at CMC at all relevant times. (Reyes-Cortez Decl. ¶ 1.) | |

**PLAINTIFF'S ADMINISTRATIVE GRIEVANCES**

| No. | Defendant's Uncontroverted Fact | Plaintiff's Response |
|---|---|---|
| 3. | An administrative grievance process was available to Plaintiff at all times between December 24, 2019 (the date of the alleged events) and September 11, 2023 (the date he filed this lawsuit). (Stout Decl. ¶ 3; Moseley Decl. ¶ 6.) | |
| 4. | Before June 1, 2020, an inmate was required to follow the procedures set forth in California Code of Regulations, Title 15, sections 3084– | |

2

| | | |
|---|---|---|
| | 3085. The grievance process had three levels of review, which the inmate initiated by submitting a CDCR Form 602 to the institution's grievance coordinator. First and second-level grievances were received and decided by the grievance office at the institution where the issue being grieved arose, while third-level grievances were received and decided by the Office of Appeals (OOA) located in Sacramento, California. A final decision by the OOA generally exhausted an inmate grievance. (Stout Decl. ¶ 3; Moseley Decl. ¶ 5.) | |
| 5. | Beginning June 1, 2020, an inmate is required to follow the procedures set forth in California Code of Regulations, Title 15, sections 3480–3487. The administrative grievance process changed to two levels of review—a review at the institution's Office of Grievances (OOG) and a review at the OOA in Sacramento. Completion of the review process by OOA constitutes exhaustion of all | |

3

| | | |
|---|---|---|
| | administrative remedies available to an inmate. (Stout Decl. ¶ 5; Moseley Decl. ¶¶ 5-6.) | |
| 6. | Between December 24, 2019 (the date of the alleged events), through September 11, 2023 (the date Plaintiff filed this lawsuit), Plaintiff submitted four administrative grievances that named Defendant, but only one of those grievances is relevant to the allegations in the operative complaint.  (Stout Decl. ¶¶ 10-14.) | |
| 7. | In Log No. CMC-20-00149, Plaintiff complained that Defendant handcuffed and escorted Plaintiff to a holding cell "in order to search his cell" on December 24, 2019. Plaintiff further complained that Defendant left Plaintiff in tight handcuffs cutting off his circulation for two hours while the cell search continued.  Plaintiff also complained that the cell search was retaliatory. The OOG received this grievance on January 8, 2020.  This grievance was | |

| | | |
|---|---|---|
| | determined to be an allegation of staff misconduct against Defendant for unnecessary or excessive use of force.  On January 21, 2020, the OOG partially granted the grievance at the second level of review (SLR), in that an appeal inquiry was conducted.  The SLR decision noted that issues unrelated to the allegation of staff misconduct will not be addressed in this response and must be raised separately. (Stout Decl. ¶ 11.) | |
| 8. | In Appeal Log No. 2003289 (an appeal of Log No. CMC-20-00149), Plaintiff alleged that Defendant used unnecessary force against Plaintiff while a correctional officer searched Plaintiff's cell on December 24, 2019.  Specifically, Plaintiff alleged that Defendant handcuffed Plaintiff too tightly and then left Plaintiff in overly tight handcuffs in a holding cell for two hours.  Plaintiff also alleged that the correctional officer's search of Plaintiff's cell was retaliatory.  This appeal did not | |

| | | |
|---|---|---|
| | include any allegation that Defendant handcuffed Plaintiff too tightly because Plaintiff had filed staff misconduct complaints. The OOA denied this appeal on December 4, 2020. (Moseley Decl. ¶ 9.) | |
| 9. | In Log No. CMC-20-00435, Plaintiff complained that Defendant and a correctional officer searched Plaintiff's cell on January 28, 2020, in retaliation for Plaintiff's submission of Log No. CMC-20-00149. On February 28, 2020, the OOG cancelled Log No. CMC-20-00435 because Plaintiff refused to be interviewed about this grievance by the reviewing lieutenant. (Stout Decl. ¶ 12.) | |
| 10. | In Log No. CMC-20-01023, Plaintiff contested the cancellation of CMC-20-00435. Plaintiff complained that the reviewing lieutenant conspired with the correctional staff named in that grievance to cover up the acts of rogue officers. The OOG denied Log No. CMC-20-01023 at the SLR | |

| | | |
|---|---|---|
| | on April 20, 2020.<br><br>(Stout Decl. ¶ 13.) | |
| 11. | In Appeal Log No. 2006716 (an appeal of Log No. CMC-20-01023), Plaintiff contested the cancellation of CMC-20-00435 at the second level of review.  In a letter dated August 10, 2021, the OOA informed Plaintiff that the second level response dated April 20, 2020, served as the Department's final decision.<br><br>(Moseley Decl. ¶ 10.) | |
| 12. | In Log No. CMC-20-00746, Plaintiff complained that Defendant and a correctional officer filed a false rules violation report (RVR) against Plaintiff for "possession of a cellular telephone component" based on "the retaliatory planting of contraband" during the December 24, 2019 cell search.  Plaintiff also complained that the senior hearing officer at the RVR disciplinary proceedings violated Plaintiff's due process rights.  The OOG denied this grievance at the SLR on April 2, | |

| | | |
|---|---|---|
| | 2020, and noted Plaintiff's allegations against Defendant were already addressed in response to CMC-20-00149. (Stout Decl. ¶ 14.) | |
| 13. | Plaintiff appealed Grievance Log No. CMC-20-00746 to the OOA, which was assigned Log No. 2008995.  In a letter dated August 10, 2021, the OOA informed Plaintiff that the second level response dated April 2, 2020, served as the Department's final decision. (Moseley Decl. ¶ 11.) | |
| 14. | Plaintiff submitted 28 other grievances to the CMC OOG from between December 24, 2019 (the date of the alleged events), through September 11, 2023 (the date Plaintiff filed this lawsuit) that were unrelated to the allegations in Plaintiff's complaint. (Stout Decl. ¶ 15-38.) | |
| 15. | Plaintiff submitted 15 other appeals to the OOA during the time period described above, but none of them contained allegations related to the | |

| | matters at issue in Plaintiff's complaint.  (Moseley Decl. ¶ 13.) | |

### THE DECEMBER 24, 2019 HANDCUFFING

| No. | Defendant's Uncontroverted Fact | Plaintiff's Response |
| --- | --- | --- |
| 16. | On December 24, 2019, Defendant was on duty as the Facility C Building 6 Fourth Officer.  At or around 10:30 a.m., the First Floor Officer ("Officer") was conducting a routine search of Plaintiff's cell while Defendant provided support by maintaining security at the cell entrance. (Reyes-Cortez Decl. ¶ 4; Pl.'s Dep. at 19:1-11.) | |
| 17. | During the search of Plaintiff's cell, the Officer found a cell phone charger, which is considered contraband.  The Officer confiscated the item and secured the cell to return to attempt to locate the corresponding cell phone. (Reyes-Cortez Decl. ¶ 4.) | |
| 18. | Plaintiff later received a Rules Violation Report for possession of a cell phone component. | |

| | | |
|---|---|---|
| | (Pl.'s Dep. 42:17-21; Widman Decl. ¶ 4, Exhibit C.) | |
| 19. | After the Officer secured the cell, Defendant observed Plaintiff approach the Officer.  Plaintiff appeared agitated and loudly demanded to be present for any subsequent search.  The Officer summoned Defendant to assist as Plaintiff refused to leave the area.  (Reyes-Cortez Decl. ¶ 5; Pl.'s Dep. at 16:15-25; 17: 1-3; 19:1-25; 20:1-25.) | |
| 20. | A disruptive inmate can cause a security and safety risk in many ways, including, but not limited to, the risk that he may try to attack staff, the risk that his behavior might be a decoy to cover for other inmates who may plan to cause a disruption, or the risk that the inmate's disruptive behavior might entice other inmates to cause a disruption. (Reyes-Cortez Decl. ¶ 6.) | |
| 21. | An inmate who appears irate or behaves in a disruptive manner during a cell search is handcuffed | |

| | | |
|---|---|---|
| | and removed from the building. Generally, building officers are responsible for removing the inmate and yard officers escort the inmate to the facility program office temporary holding cell. (Reyes-Cortez Decl. ¶ 7.) | |
| 22. | Based on the contraband discovery and Plaintiff's disruptive behavior, Defendant determined it was not safe for Plaintiff to be there and ordered Plaintiff to turn around and to submit to handcuffs.  Plaintiff complied with Defendant's orders. Defendant saw nothing in Plaintiff's conduct or demeanor that would suggest that the handcuffs were unusually tight. (Reyes-Cortez Decl. ¶ 8.) | |
| 23. | Consistent with Defendant's training and experience as a correctional officer regarding the application of handcuffs, Defendant always confirms that an index finger fits between the inmate's wrists and the handcuffs.  Using this measurement ensures the handcuffs will not cut off | |

| | | |
|---|---|---|
| | circulation but are snug enough to prevent the possibility of escape. (Reyes-Cortez Decl. ¶ 9.) | |
| 24. | Generally, once an inmate is placed in handcuffs, a housing unit officer escorts the inmate to the entrance of the housing unit, where a yard officer takes over the escort to the program office. Based on this general practice, Defendant believes she escorted Plaintiff from the first-floor cell area to the entrance of Building 6, where a Facility C yard officer took custody of Plaintiff to escort him to the program office for placement in a temporary holding cell. (Reyes-Cortez Decl. ¶ 10.) | |
| 25. | Defendant does not recall having any further involvement with Plaintiff on December 24, 2019. To the best of Defendant's recollection, Defendant did not secure Plaintiff in the temporary holding cell, nor did Defendant release Plaintiff from the temporary holding cell. (Reyes-Cortez Decl. ¶ 11.) | |

12

| 26. | In his deposition, Plaintiff testified that Defendant escorted Plaintiff to the holding cell where he complained about the handcuffs. Specifically, Plaintiff testified that, "she left me in the cage with the handcuffs on too tight, and I told her before she left, 'The handcuffs too tight. Can you take them off?' She told me, 'No, stay in the cage.'" (ECF No. 43 at 1-2; Pl.'s Dep. at 17:4-8.) | |
| --- | --- | --- |
| 27. | Plaintiff further testified that Defendant retaliated against him by ordering other correctional officers to search his cell after he filed the grievance against Defendant for the handcuffing on December 24, 2019. Plaintiff conceded that Defendant did not retaliate against him by handcuffing him on December 24, 2019. (Pl.'s Dep. at 38:7-25, 39:1-8, 46:15-22.) | |

**PLAINTIFF'S ALLEGED INJURIES**

| No. | Defendant's Uncontroverted Fact | Plaintiff's Response |
|---|---|---|
| 28. | According to Plaintiff's deposition testimony and the operative complaint, the December 24, 2019 handcuffing incident caused injury to Plaintiff's right shoulder extending down through his right arm and fingers.  Plaintiff testified that he felt "tingling in the fingers, numb throughout the shoulder, all the way up the arm, tingling and just pain," and that he sought and received medical care for his alleged injuries, including physical therapy, medication, and a wrist support brace. (ECF No. 43 at 1; Pl.'s Dep. at 32:7-11, 32:24-25, 33:1-5, 33:24-25, 34:1-20, 35:7-22.) | |
| 29. | Plaintiff testified that his injuries have not healed and that he occasionally feels the "tingling in his shoulder and his fingers," but acknowledged that he suffered no other injuries as a result of the December 24, 2019 handcuffing. | |

14

| | | (Pl.'s Dep. at 33:1-25, 34:1-3.) | |
|---|---|---|---|

**PLAINTIFF'S MEDICAL RECORDS**

| No. | Defendant's Uncontroverted Fact | Plaintiff's Response |
|---|---|---|
| 30. | Plaintiff's prison medical file records reveal that Plaintiff never complained of his alleged December 24, 2019 injuries nor did he request medical care for them. However, on April 7, 2020, Plaintiff submitted a 7362 Health Care Request for Services (CDCR 7362), in which Plaintiff complained for the first time of "numbing pain in my fingers and arms," and attributed these injuries to being tightly handcuffed by a non-defendant correctional officer, who is not a party in this lawsuit, for an hour and a half on the morning of April 7, 2020. (Adams Decl. ¶ 6, Ex. A-1.) | |
| 31. | Plaintiff's medical records reveal that Plaintiff repeatedly attributed his alleged injuries to a handcuffing incident on April 7, 2020. An October 2, 2020 medical progress report states that Plaintiff "denies | |

15

| | | |
|---|---|---|
| | any specific injury and denies any prior history of pain in this area.  He states in April 2020 he was placed in handcuffs for 2 hours and after that he felt the numbness in his right arm which he states he still feels up to this time." (Adams Decl. ¶ 13, Ex. A-2.) | |
| 32. | Over the next two years, from April 2020 through April 2022, Plaintiff received medical treatment and underwent various diagnostic tests for the injuries he complained of on April 7, 2020.  These tests revealed Plaintiff has several degenerative conditions in his spine, neck, and both shoulders, including nerve impingement and arthritis, and a bullet in his cervical spine and left shoulder. (Adams Decl. ¶¶ 8-11, Exs. A-5, A-6, A-7, A-8.) | |
| 33. | Plaintiff's alleged injuries—tingling, numbness, and pain in his right shoulder extending to his wrist and fingers—are the result of nerve | |

16

| | | |
|---|---|---|
| | impingement and arthritis in his neck and shoulder. (Adams Decl. ¶ 14.) | |
| 34. | It is a matter of medical certainty that those injuries could not be the result of restrictive handcuffing nor are there medical records reporting that Plaintiff complained about any injury resulting from the handcuffing on December 24, 2019, and/or that Plaintiff sustained any injury to his right shoulder, arm, or wrists as a result of the handcuffing on December 24, 2019. (Adams Decl. ¶¶ 12-15.) | |

Dated:  November 13, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General


*/s/ Carolyn G. Widman*
CAROLYN G. WIDMAN
Deputy Attorney General
*Attorneys for Defendant Reyes-Cortez*

LA2023306192
67229977.docx

17