ROB BONTA
Attorney General of California
JANET N. CHEN
Supervising Deputy Attorney General
CAROLYN G. WIDMAN
Deputy Attorney General
State Bar No. 330088
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6655
  Fax: (916) 731-3641
  E-mail: Carolyn.Widman@doj.ca.gov
*Attorneys for Defendant*
*Reyes-Cortez*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **PEDRO WHITE, SR.,** | 2:21-cv-02351-GW-DFM (PC) |
| Plaintiff, | **DECLARATION OF M. REYES-CORTEZ IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **J. GASTELO, et al.,** | |
| Defendants. | Judge: The Honorable Douglas F. McCormick |
| | Trial Date: Not Set |
| | Action Filed: 3/15/2021 |

I, M. Reyes-Cortez, declare as follows:

1. I am a Defendant in this action. I am currently retired from the California Department of Corrections and Rehabilitation (CDCR). I started working at California Men's Colony (CMC) as a Correctional Officer in 2007 and held that position until I retired in 2024.

2. As a Correctional Officer, my primary responsibility was to enforce all departmental rules, regulations, policies, and procedures as they pertained to inmates while maintaining order, discipline, and security within my assigned area.

1

3. In December 2019, I was assigned to Facility C Building 6 as the Fourth Officer (Building Rover) during second watch (6:00 a.m. to 2:00 p.m.). Building 6 has three floors with one officer assigned to each floor and an additional Fourth Officer (Building Rover). The daily operations for second watch Building 6 officers included security checks, various hourly unlocks and inmate releases for yard and day room, meals, work assignments, and miscellaneous activities. With every unlock and release of an inmate, building officers must recall and lock-up the inmates, while also conducting security checks and random cell searches, and supervise the activities in their assigned area. As the Building Rover, I assisted the other Building 6 floor officers with any routine task, including inmate cell searches, and provided support if an incident occurred.

4. On December 24, 2019, I was on duty as the Facility C Building 6 Fourth Officer. At or around 10:30 a.m., the First Floor Officer was conducting a routine search of inmate White's cell while I provided support by maintaining security at the cell entrance. During the search, the Officer found a cell phone charger, which is considered contraband. The Officer confiscated the item and secured the cell to return to attempt to locate the corresponding cell phone.

5. After the Officer secured the cell, I observed inmate White approach the Officer. Inmate White appeared agitated and loudly demanded to be present for any subsequent search. The Officer summoned me to assist as inmate White refused to leave the area.

6. A disruptive inmate can cause a security and safety risk in many ways, including, but not limited to, the risk that he may try to attack staff, the risk that his behavior might be a decoy to cover for other inmates who may plan to cause a disruption, or the risk that the inmate's disruptive behavior might entice other inmates to cause a disruption.

7. An inmate who appears irate or behaves in a disruptive manner during a cell search is handcuffed and removed from the building. Generally, building

2

officers are responsible for removing the inmate and yard officers escort the inmate to the facility program office temporary holding cell.

8.   Based on the contraband discovery and inmate White's disruptive behavior, I determined it was not safe for him to be there and ordered him to turn around and to submit to handcuffs.  Inmate White complied with my orders, and I put the handcuffs on in an ordinary manner.  I did not put the handcuffs on inmate White in an unusually tight manner or with the intention to cause inmate White pain.  I saw nothing in inmate White's conduct or demeanor that would suggest that the handcuffs were unusually tight, and inmate White did not complain about the handcuffs.

9.   Consistent with my training and experience as a correctional officer regarding the application of handcuffs, I always confirm that my index finger fits between the inmate's wrists and the handcuffs.  Using this measurement ensures the handcuffs will not cut off circulation but are snug enough to prevent the possibility of escape.

10.   Although I do not specifically recall whether I escorted inmate White to the program office holding cell as alleged, I do not believe that I did because it is not standard procedure for a housing unit floor officer to leave the housing unit in order to escort an inmate to the program office.  Generally, once an inmate is in handcuffs, as a building floor officer, I would escort the inmate to the entrance of the housing unit, where a yard officer would take custody of the inmate for escort to the program office.  I have no reason to believe that I deviated from this standard practice on the date in question.  Based on the standard practice, I believe that after I handcuffed inmate White, I escorted inmate White from the first-floor cell area to the entrance of Building 6 where a Facility C yard officer took custody of inmate White to escort him to the program office for placement in a temporary holding cell.

3

11.  I do not recall any further involvement with inmate White on December 24, 2019.  I do not recall the officer who released inmate White from the temporary holding cell, as I do not recall being in the program office, nor do I recall when inmate White was released from the temporary holding cell.

I declare under penalty of perjury that this declaration is true.

Executed November 09, 2024.

_____
Defendant M. Reyes-Cortez

LA2023306192
67228142.docx

4